Glenna Frances **TUCK**, Administratrix of the Estate of George William Tuck, deceased, Appellant,

v.

The **CHESAPEAKE AND OHIO RAIL-WAY COMPANY**, a corporation, Appellee.

No. 7502.

United States Court of Appeals Fourth Circuit.

Argued Nov. 7, 1957.

Decided Jan. 6, 1958.

W. Hayes Pettry, Charleston, W. Va. (Dewey B. Jones, Charleston, W. Va., on the brief), for appellant.

Amos A. Bolen, Huntington, W. Va. (Strother Hynes, Richmond, Va., and Fitzpatrick, Marshall, Huddleston & Bolen, Huntington, W. Va., on the brief), for appellee.

Before PARKER, Chief Judge, and SOBELOFF and HAYNSWORTH, Circuit Judges.

SOBELOFF, Circuit Judge.

This is one of the rare and exceptional cases in which a trial judge is justified in dismissing a case upon the plaintiff's opening statement.

Counsel related that the plaintiff's decedent, traveling alone at night on a West Virginia highway, near his home, drove his automobile into the side of the nineteenth car of a moving coal train and was killed. "I think," the lawyer said, "the evidence will be that it was foggy and it had been raining and visibility was poor. We also believe that we will show that the railroad was negligent in maintaining a crossing at the place where this accident happened." He added

that the train was black and the pavement was what is known as "black-top."

At the conclusion of the statement, the railroad moved the Court to direct a verdict in its favor, on the twin grounds that the statement showed no negligence whatever on its part, and also clearly showed that the decedent himself was guilty of negligence which was a proximate cause of the collision.

■■ The District Judge did not act precipitously, but patiently sought to draw from plaintiff's counsel further information as to the tragic event which might indicate a genuine issue of fact, either as to primary or contributory negligence. He asked the jury to retire to its room and invited counsel to amplify and strengthen his statement, but counsel was unable to do so. He repeated that the act of primary negligence relied on was "in not having a warning there of the way they were using the track at the crossing." Discussion developed that he meant that the cross arm sign was not lighted or reflectorized, and that this did not comply with the Road Commission's regulations. The law does not require such reflectorizing in all cases. The command of the statute is that the design, construction, and location of signboards and notices shall be "in the manner required or approved by the state road commission." W. Va. Code (1955), Ch. 31, Art. 2, Sec. 9. Neither in the District Court nor here has it been shown that the commission required generally or at this location a reflectorized sign or that the sign that existed at the crossing had not been approved. However, it was proper at that stage of the proceedings to infer that the sign was, as plaintiff asserted, not in compliance with the law.

The judge inquired as to what, even on the assumption of primary negligence, was proposed to be shown to overcome the compelling force of the circumstances raising the inference of negligence on the decedent's part. The attorney again in licated reliance on the railroad's asserted failure to maintain proper signs, and also stressed the fact that there was fog. He cited a West Virginia case which holds that "* * * *in the absence of proof to the contrary,* it is to be assumed that the decedent took the necessary steps for his safety." (Emphasis supplied.) Belcher v. Norfolk & Western Ry. Co., 1955, 140 W.Va. 848, 87 S.E.2d 616, 621.

Pointing out that in the case on trial, there were convincing circumstances rebutting the presumption, the trial judge then gave plaintiff's counsel further opportunity to dictate for the record any additional facts which might have been omitted, and indicated a willingness to consider anything further that might be offered. Counsel added, "The proximate cause of [the accident] was the failure of the railroad company to maintain proper warnings at this place. It is situated close to the embankment so that when the train passed, and with poor visibility in the fog, it was impossible for this man to see where he was on the road."

He referred to pictures, theretofore offered at pretrial. These have been reproduced on appeal. They establish beyond dispute that despite a barely perceptible bend in the highway, the view of the crossing is unobstructed for a distance of at least five hundred and fifty feet; that there is a circular metal marker with a cross and large letters, "R R," on the right side of the road, as well as the cross arms on the left; there is also a series of white painted lines on the highway indicating approach to a railroad crossing.

■ The Judge's power to dismiss upon the plaintiff's opening statement should be exercised sparingly and only where an absolute defense is disclosed beyond doubt. Oscanyan v. Arms Co., 1880, 103 U.S. 261, 26 L.Ed. 539; Halin v. United Mine Workers of America, 1956, 97 U.S.App.D.C. 210, 229 F.2d 784. The opening statement is not the time to point out all the niceties of the testimony which is to come, and ordinarily, even a palpably weak case should be permitted to proceed. Stuthman v. United States, 8 Cir., 1933, 67 F.2d 521, 523. However skeptical the Judge may be of the plain-

tiff's ability to prove his claim, he is entitled to have the jury pass on it. Usually, negligence and contributory negligence are conclusions calling for analysis and judgment of many component facts, and normally, when only the opening statement has been heard, it is not possible to make a mature and reliable decision.

We are not unmindful of the case of Best v. District of Columbia, 1934, 291 U.S. 411, 415, 54 S.Ct. 487, 489, 78 L.Ed. 882, in which Chief Justice Hughes, speaking for the Supreme Court, succinctly summarized the principle:

> "The opening statement of counsel is ordinarily intended to do no more than to inform the jury in a general way of the nature of the action and defense so that they may better be prepared to understand the evidence * * * Plaintiff is entitled to the benefit of all inferences that may be drawn from his counsel's statement. To warrant the court in directing a verdict for defendant upon that statement, it is not enough that the statement be lacking in definiteness, but it must clearly appear, after resolving all doubts in plaintiff's favor, that no cause of action exists." [1]

Here, however, the opening statement reveals beyond question the absence of a valid claim and the futility of a trial. Accepting as true the affirmations of counsel, and indulging every reasonable inference in plaintiff's favor, we think that a conclusion of contributory negligence is inescapable. We accept as controlling Divita v. Atlantic Trucking Co., 1946, 129 W.Va. 267, 40 S.E.2d 324, which declares the settled law of West Virginia; it is a driver's duty, if his automobile lights do not penetrate a dense fog, to use corresponding caution in proceeding.

The clear import of the plaintiff's photographs, together with plaintiff's counsel's emphatic description of the inclement weather, leaves no room for any reasonable inferences, however favorable, sufficient to remove this situation from the rule of the Divita case. See also: McFadden v. Northern Pacific Ry. Co., 1930, 157 Wash. 437, 289 P. 1; Reading Co. v. Layton, 3 Cir., 1937, 92 F.2d 289; Hubbard v. Pennsylvania Railroad Company, 6 Cir., 1956, 232 F.2d 631; United States Fidelity & Guaranty Co., v. McCullough, 5 Cir., 1953, 202 F.2d 269; Allen v. Texas & Pacific Ry. Co., 5 Cir., 1952, 195 F.2d 545; Norfolk Southern Ry. Co. v. Swindell, 4 Cir., 1943, 139 F.2d 71.

We do not here decide that running into the side of a moving train at night is always in law an act of contributory negligence. We hold only that the circumstances shown in the opening statement as elaborated are unequivocal and leave no room for any inference other than one of contributory negligence. The order appealed from must be

Affirmed.

1. See also: McGovern v. Hitt, 1933, 62 App.D.C. 33, 64 F.2d 156; Anderson v. Missouri State Life Ins. Co., 6 Cir., 1934, 69 F.2d 794; Illinois Power & Light Corporation v. Hurley, 8 Cir., 1931, 49 F.2d 681; Greene v. Hathaway, 1951, 89 U.S.App.D.C. 229, 191 F.2d 656; Pomeroy v. Pennsylvania Railroad Co., 1955, 96 U.S.App.D.C. 128, 223 F.2d 593;

Calbreath v. Capital Transit Company, 1956, 99 U.S.App.D.C. 383, 240 F.2d 621; Cioffi v. Queenstown Apartments, Section E, 1957, 100 U.S.App.D.C. 227, 243 F.2d 650; Ackerhalt v. National Savings & Trust Co., 1956, 100 U.S.App. D.C. 312, 244 F.2d 760; Halin v. United Mine Workers of America, 1956, 97 U.S. App.D.C. 210, 229 F.2d 784.